# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-0353V**
UNPUBLISHED

| | |
|---|---|
| LISA BLUNT, | Chief Special Master Corcoran |
| Petitioner, | Filed: April 5, 2021 |
| v. | Special Processing Unit (SPU); Findings of Fact; Onset;  Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Heather Varney Menezes, Shaheen & Gordon, P.A., Manchester, NH, for Petitioner.*

*Mallori Browne Openchowski, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On March 27, 2020, Lisa Blunt filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("flu") vaccine on September 28, 2018. Petition at 1, ¶ 3. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find there is preponderant evidence establishing that the onset of Petitioner's SIRVA occurred within 48 hours of vaccination. Specifically, Petitioner likely suffered pain immediately upon vaccination.

## I.      Relevant Procedural History

Along with the Petition, Ms. Blunt filed her affidavit and some of the medical records required by the Vaccine Act. Exhibits 1-10, ECF No. 1. Included in these exhibits was a letter from Dr. Campbell at Orchard Surgical Center, where Petitioner was working when she received the flu vaccine, indicating that he was aware of Petitioner's injury and administered a cortisone injection to her shortly after vaccination. Exhibit 3. Approximately ten days later, Petitioner filed medical records requests and certification, additional medical records, a supplemental affidavit, and a statement of completion. Exhibits 11-13, ECF Nos. 7-8.

Following the initial status conference, held on May 18, 2020, Respondent filed a status report requesting medical records or additional documentation regarding the cortisone injection administered by Dr. Campbell. ECF No. 13. In response, Petitioner filed a letter from the office manager at Orchard Surgical Center indicating there were no records for Petitioner, including any documentation regarding the cortisone injection administered by Dr. Campbell. Exhibit 14, ECF No. 14.

On October 14, 2020, Respondent filed another status report indicating that, given the lack of documentation regarding the cortisone injection administered to Petitioner several weeks after vaccination, additional factual development on the issue of onset may be needed. ECF No. 17. On February 8, 2021, Petitioner filed a status report providing further explanation regarding onset and her current condition, an affidavit from the office manager at Orchard Surgical Center, her third affidavit, and another statement of completion. ECF Nos. 20-23.

I have determined that a factual finding regarding the onset of Petitioner's SIRVA is required in this case, and will assist in its ultimate disposition.

## II.      Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

III.   **Authority**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.   Finding of Fact

I make the findings after a complete review of the record to include all medical records, affidavits, and additional evidence filed.  Specifically, I base the findings on the following evidence:

- Prior to receiving the flu vaccine, Petitioner visited her primary care provider ("PCP") for annual physicals and common illnesses. Exhibit 10 at 49-91. There is nothing in the medical records to suggest Petitioner suffered prior shoulder problems.

- Petitioner received the flu vaccine alleged as causal in her right deltoid on September 28, 2018. Exhibit 2 at 1. According to Petitioner, the vaccination was required by her employer, Orchard Surgical Center, LLC. Exhibit 5 at ¶¶ 1-2.

- In her affidavit, Petitioner described "immediate discomfort in [her] right arm after vaccination." Exhibit 5 at ¶ 4. She added that "[w]ithin a few hours following the September 28, 2018 vaccination, [she] could barely lift [her] arm." *Id.* Reporting that she received the vaccination on Friday, Petitioner indicated that she took Aleve throughout the weekend. *Id.*

- While she did not specify the exact timing of her complaints, Petitioner stated that she informed her supervisor Karen Belanger of her right shoulder injury, who then consulted the Chief Operating Officer Cathy D'Entremont. Exhibit 5 at ¶ 5. In her affidavit, Ms. Belanger indicated Petitioner informed her of the right shoulder pain she was experiencing the next day, on Saturday, October 1, 2018. Affidavit of Karen Belanger ("Belanger Aff.") at ¶ 3. Ms. Belanger added that she informed Ms. D'Entremont of Petitioner's injury on Monday, October 3. *Id.* at ¶ 4.

4

- Both Petitioner and Ms. Belanger reported that, when Petitioner's symptoms failed to improve, Ms. D'Entremont arranged for Dr. Campbell, an orthopedic surgeon at Orchard Surgical Center, to administer a cortisone injection to Petitioner. Exhibit 5 at ¶ 6; Belanger Aff. at ¶ 4. Petitioner submitted a letter from Dr. Crawford Campbell, confirming that he administered the cortisone injection as described, at the request of Ms. D'Entremont. Exhibit 3.

- Dr. Campbell indicated that the cortisone injection "was given informally in the facility, approximately a week and a half to two weeks after [Petitioner] received the flu shot, due to increasing pain in [Petitioner's] right shoulder." Exhibit 3. Petitioner recalled the injection occurred slightly later, two to three weeks after vaccination. Exhibit 5 at ¶ 7. According to Ms. Belanger, the cortisone injection was administered by Dr. Campbell in mid-October. Belanger Aff. at ¶ 4. These time periods translate to the following dates: October 8 to 12, October 12 to 19, and October 15, 2018.

- Ms. Belanger indicated that Petitioner "was not charged for the cortisone injection [which] was done as a favor, informally by the surgeon, with no formal record created." Belanger Aff. at ¶ 4. She adds that "[t]he fact that there are no records of this injection is not unusual or unexpected." *Id.* In the submitted letter, dated July 21, 2020, Ms. Belanger reported "there are no medical records or bills at [Orchard Surgical Center] regarding Lisa Blunt." Exhibit 14.

- Petitioner's medical records show she visited her PCP for a physical and labs on October 23 and 30, 2018, and for a cough on December 18, 2018 and January 8, 2019. Exhibit 2 at 36-48. There is no mention of right shoulder pain in the records from these visits.

- In her affidavit, Petitioner claimed that her symptoms returned "[a] few weeks after the cortisone injection" which would have been early November 2018. Exhibit 5 at ¶ 7. However, when seen on March 19, 2019, she indicated the cortisone injection "relieved her pain up until a few weeks ago," in early March 2019. Exhibit 6 at 2. The March 19, 2019 record also indicates the cortisone injection occurred in January 2019. *Id.*

- According to the medical records, Petitioner next complained of her right shoulder pain when she presented for evaluation for a workers' compensation claim on March 19, 2019. Exhibit 6 at 1-4. Petitioner and Ms.

Belanger both indicated this visit was at Ms. Belanger's suggestion. Exhibit 5 at ¶ 8; Belanger Aff. at ¶ 5.

- In the history Petitioner provided at the March 19, 2019 visit, she indicated that her right shoulder pain occurred on September 28, 2018 when she received the flu shot. Exhibit 6 at 2. She described her current level of pain as seven out of ten, indicating it was associated with radiation or tingling down her fingers. *Id.* Upon examination, tenderness in the bicipital groove was observed. *Id.* at 3. Petitioner exhibited pain with shoulder movement but normal range of motion ("ROM") and strength. Petitioner's symptoms were found to be work related.  Physical therapy ("PT") was prescribed, but no work restrictions were needed. *Id.*

-  At her first PT session, Petitioner reported that she got a flu shot in September which produced soreness and an inability to move her arm by the next morning. Exhibit 7 at 1. Petitioner reported a cortisone injection in December or January "which helped," but a return of pain which was now "tingling down into [her] fingers." *Id.*

- Petitioner returned for re-evaluation of her workers' compensation claim on April 2, 17, and 26, 2019. Exhibit 6 at 5-13. Her right arm pain continued to be attributed to the flu shot she received. *Id.* at 5, 8, 11. The onset of Petitioner's right shoulder issues was listed as September 28, 2018. *Id.* at 9, 12.

- On September 27, 2019, Petitioner sought a second orthopedic opinion regarding her shoulder injury. Exhibit 4 at 1-3. At this visit, Petitioner again reported "that she immediately had significant discomfort that got progressively worse within 24 hours, during which she really could not lift her arm at all and was quite miserable." *Id.* at 2.

- Petitioner returned to the same orthopedist on November 8 and 11, 2019 and January 8, 2020. Exhibit 4 at 5-27. At these appointments, Petitioner again attributed her right shoulder pain to the flu vaccine she received approximately one year ago. *Id.* at 7, 17-18, 24. The orthopedist opined that it was possible the flu vaccine was injected deeply enough to have caused direct irritation of Petitioner's rotator cuff. *Id.* at 13, 19, 21.

The record as a whole supports Petitioner's description of immediate pain which was temporarily relieved by a cortisone injection administered by Dr. Campbell in early to mid-October 2018, not long after the relevant vaccination. While there are minor differences, the accounts provided by Ms. Belanger and Dr. Campbell mirror Petitioner's claims. Additionally, the lack of documentation regarding the cortisone injection Petitioner received in October 2018 is not unreasonable, given that 1) Petitioner was required to receive the flu vaccine at the clinic where she was employed, 2) the cortisone injection was provided informally and at no cost, in an effort to address pain resulting from the vaccination, and 3) Petitioner received her usual medical care from another provider. Thus, I find these events likely occurred as Petitioner described.

Although Petitioner now claims she obtained only a few weeks relief from this cortisone injection, the record as a whole indicates she gained more significant relief. It appears Petitioner's symptoms did not return until late February or early March 2019. However, several months of temporary relief is often experienced in response to a cortisone injection.

When Petitioner again sought treatment in conjunction with her worker's compensation claim, she consistently reported that her right shoulder pain began immediately upon vaccination. Without fail, she attributed her injury to the flu vaccine she received on September 28, 2018. On multiple occasions she identified the date of onset specifically as September 28, 2018. While these entries were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury for the purposes of obtaining medical care.

The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

Furthermore, Petitioner's assertions are supported by the opinions of both orthopedists who treated her during 2019 and 2020. Both orthopedists determined that, for the purposes of Petitioner's workers' compensation claim, the right shoulder pain she was experiencing was due to the flu vaccine she received on September 28, 2018.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination. Specifically, I find the onset of petitioner's pain immediately upon vaccination.

**V.      Scheduling Order**

Petitioner should convey her finalized demand and supporting documentation to Respondent as soon as possible. **Petitioner shall file a status report regarding her demand and supporting documentation by no later than <u>Friday, May 07, 2021</u>, a status report indicating how he intends to proceed in this case**. The status report shall indicate the date by which Petitioner provided, or intends to provide, a demand and supporting documentation to Respondent.

**Respondent shall file a status report indicating how he intends to proceed or providing an updated estimate for the performance of his review by no later than <u>Friday, June 04, 2021</u>.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master
